NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN D' AGOSTINO<br><br>Plaintiff,<br><br>vs.<br><br>APPLIANCES BUY PHONE, INC. and Google, Inc. | Case No.: 3:10-cv-05415<br><br>**MEMORANDUM & ORDER** |

This matter began in the Superior Court of New Jersey. Soon thereafter, Google removed the case to this Court, and thereafter four motions were filed: (1) Defendant Google Corporation's ("Google") motion to transfer venue to the Northern District of California ("Google's Motion to Transfer"); (2) Plaintiff Steven D'Agostino's ("Plaintiff") motion to remand ("Plaintiff's Motion to Remand"); (3) Defendants Appliances Buy Phone, Inc. ("ABP"), Steven Sigman ("Mr. Sigman"), Cheryl Sigman's ("Mrs. Sigman") motion to dismiss and (4) Plaintiff's motion to strike Mr. Sigman's amended counterclaim ("Mr. Sigman's Amended Counterclaim").

On January 18, 2011, Plaintiff filed an amended complaint. The major purpose of the amendment was to delete federal causes of action against Google and ABP as a means to remand the case to state court. Accordingly, Plaintiff asserts common law causes of action against the Sigmans and ABP. Plaintiff changed his causes of actions against Google alleging federal antitrust violations to agent's negligence causing harm; competition unlawfully restrained; and unfair competition.

1

On January 31, 2011 Mr. Sigman filed an Amended Counterclaim. He alleges that Plaintiff violated the New Jersey Consumer Fraud Act (the "NJCFA"); as well as acted negligently and breached a contract.

I.

Plaintiff, pro se, is a website developer. ABP is an online retailer of large home appliances. Mr. Sigman is the sole shareholder of ABP and chief officer who operates ABP. Mrs. Sigman is a key employee of ABP (but not a shareholder). Google provides many services and products including an internet search engine and web browser "Chrome."

In August 2003, Mr. Sigman and Plaintiff agreed that Plaintiff would develop a website for marketing ABP products (the "First Website"). The included a customized search engine, shopping cart, and online payment system. Oddly, the contract was between Mr. Sigman, individually, and the Plaintiff for the benefit of ABP[1]. Plaintiff agreed to construct the First Website for a fixed fee of $1500. Plaintiff maintains that despite "what was common with all of [Plaintiff's] competitors at that time, Plaintiff did not ask for any recurring fees."

In addition to these tasks, Plaintiff also performed other services for Mr. Sigman and ABP. (Plaintiff's Amended Complaint, ¶¶ 16-20, 34-36). For example, Plaintiff's tasks at this time included:

> writing a 'very long and detailed specification requirement' for the proposed new code, writing new software to read newly-acquired product data, making "scripts" to save and store thousands of product images before they were removed by a third party who is purported to have been unscrupulous ("Ackerman"), re-writing the ABP website

---

[1] Although it was not alleged, ABP appears to be the third beneficiary of this agreement between Mr. Sigman and Plaintiff.

> code yet again, and 'dropp[ing] what I was doing to help' during late night emergencies, while on the road, and while on vacation.

For services outside the scope of the Agreement, Defendants requested that Plaintiff provide an invoice detailing the work that he performed and the associated costs. Instead of detailing the costs of all his services, however, Plaintiff submitted a limited invoice for a certain services that he performed. According to Plaintiff, although he did not provide ABP with a list of all services rendered, Plaintiff still expected Mr. Sigman to compensate Plaintiff for all services rendered. Although disappointing to Plaintiff, but much to be expected, Plaintiff received payment only for the services specified in the invoice.

In 2008, Plaintiff built Mr. Sigman a special CMS (Content Management System) tool which more quickly uploaded product data and pictures onto his website helped him. For this service, Plaintiff requested that Mr. Sigman pay him "what he thought was fair." Once again, his expectation was met. Plaintiff thought he deserved $12,000 for this service, but Mr. Sigman paid him $4,000.

In the summer of 2009, Mr. Sigman suggested that Plaintiff improve on the search engine optimization ("SEO") skills in order to assist ABP in promoting the First Website. According to Plaintiff, instead of seeking an hourly wage, Plaintiff and Sigman agreed to develop a new website (the "Second Website") – with a different URL – and each party would allegedly receive fifty percent of the profits generated from the Second Website. Mr. Sigman's First Website's domain name was www.ApplianceBuyPhone.com. Mr. Sigman also owned the domain name of the Second Website (www.Appliance4Sale.com). Both websites operated at the same time, which allowed customers to purchase appliances from either site. After Plaintiff developed the Second Website over a several month period, it was launched in October 2009.

The Second Website posted the product data on Google Products to increase marketing. Google Products are "an online service that allows computer users to type product queries and obtain lists of vendors and pricing information for particular products." As the Second Website developer, Plaintiff registered ABP for this service with Google. By registering, either Sigman or Plaintiff entered into an agreement with Google and agreed to comply with the Google Merchant Center Terms of Service ("Google Merchant Agreement"). The most relevant provision reads:

> Choice of Law and Forum. The Terms of Service and the relationship between you and Google shall be governed by the laws of the State of California without regard to its conflict of law provisions. *You and Google agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California.*

(Google Merchant Agreement, p. 10) (emphasis added).   After several months, the sales significantly increased on the Second Website. In the month of June, 2010, ABP received over $30,000 worth of orders from Plaintiff's Second Website. In July 2010, Mr. Sigman instructed Plaintiff to stop selling air conditioners due to limited supply. Despite this mandate, Mr. Sigman continued to sell air conditioners on the First Website, thereby depriving Plaintiff of the opportunity to earn commission.

Around this same time, the Second Website experienced many glitches, and sales on the Second Website immediately stopped. As it turns out, Google Products shut down the Second Website temporarily because it identified the First Website and the Second Website as duplicative websites which breached one of Google's Merchant Center Terms. Around the same time, Mr. Sigman had experienced glitches on the First Website, and Mr. Sigman believed was related to Google's disapproval of the Second Website as duplicative.   In response, Mr. Sigman, after discussing it with Google, ceased operating the Second Website in order to comply with Google's

rules. It appears Google believed that Mr. Sigman was the domain site owner because it was registered under his name.

Defendants allegedly offered no compensation to Plaintiff for his loss, even though he admitted that Plaintiff had spent 1000-2000 hours working on the Second Website. (Plaintiff's Amended Complaint, ¶ 64).

## II.

As part of its motion, Google seeks to transfer all claims against Google to the United States District Court for the Northern District of California, because of the forum selection clause agreed upon through contracting on the internet.

### Motion to Dismiss or Transfer

Google cites to several cases which refer to the enforcability of a forum selection case. *Tradecomet.com v. Google, Inc.*, 2001 WL 3068851 (2d Cir. 2011); *Jumara v. State Farm*, 55 F. d. 873, 880 (3d Cir. 1995); *Philips v. Audio Active*, 494 F. 3d 384 (2d Cir. 2007). The problem with Google's argument is there is little or no proof of a contract between Google and D'Agostino. D'Agostino may have been the web designer who registered the Second Website to Google; but D'Agostino may only have been an agent for Mr. Sigman who was the registered owner of the domain site. At any rate, a contract term can not be imposed upon a non-party, and D'Agostino's role is unclear. Until we know more about the relationship of D'Agostino and Mr. Sigman with regard to ownership of the Second Website, and what party contracted with Google, the issue presented can not be resolved.

"[F]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a). In circumstances such as this – where the parties have agreed to a forum selection clause – "[t]he parties' agreement as to the most proper forum should [be] entitled to substantial consideration." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). A party "may bring a motion to transfer from the initial federal forum to another federal court based on a valid forum selection clause." *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 297 (3d Cir. 2001). Here, it is questionable whether there is a valid agreement between D'Agostino and Google. As such, the motion to transfer or dismiss is denied without prejudice[2].

## Motion to Remand

D'Agostino seeks to remand the case to the Superior Court based upon an amendment to the Complaint. Procedurally, on October 19, 2010, Google removed the case from the Superior Court of New Jersey to the district court because D'Agostino claimed that Google violated "numerous federal antitrust laws and congressional acts, including but not limited to, 15 U.S.C. § 1, 15, U.S.C. § 2, 15 U.S.C. §13, 15 U.S.C. §14, and the Sherman, Robinson-Patman and Clayton Acts," (Compl. ¶¶ 162, 171), and a common law claim denominated "agent's negligence causing harm." See Compl. ¶¶ 151-58.

After receiving the Notice of Remand, D'Agostino filed an Amended Complaint deleting the federal causes of action, and requests by this motion to remand this case to the Superior Court, thinking he has cured the problem by deleting federal causes of action.

---

[2] In this motion to transfer, the parties did not extensively analyze *Breman v. Zapata*, 407 U.S. 1, 8 (1972) (wherein the Supreme Court considers "overweening bargaining power" as a reason to decline enforcement of a forum selection clause). If the issue resurfaces, *Breman* should be considered.

A federal district court maintains "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. §1331. A party's right to remove a civil action is "determined according to the plaintiff's pleading at the time of the petition for the removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939). "[A] subsequent amendment to the complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction." *Seawright v. Greenberg*, 233 F. App'x. 145, 148 (3d Cir. 2007). In this case, the *Seawright* decision applies. Here the subsequent elimination of federal causes of action does not defeat jurisdiction. *Id.*

As mentioned above, it is well-established that a party's right to remove an action is determined by examining the operative complaint at the time that the removing party files a notice of removal. *Pullman Co.*, 305 U.S. at 537. Here, the operative complaint at the time of the notice of removal includes federal causes of action. (Complaint, ¶ 119, 161, 172). Because this Court maintained subject matter jurisdiction over this dispute at the time that Plaintiff filed the Complaint, this Court continues to maintain subject matter jurisdiction over this dispute now. As a result, remanding this dispute to the Ocean County Superior Court of New Jersey would be inappropriate. As such, Plaintiff's Motion to Remand is denied.

Other Defendant Motions

There is a motion to dismiss all claims against Mrs. Sigman, Counts 1, 3, 6, 8, and 9 against ABP and Mr. Sigman, and all punitive damage claims emanating from Plaintiff's contract. For the reasons set forth below, the motion to dismiss all claims against Mrs. Sigman, and punitive damages for contract-related claims is granted, and the motion to dismiss Counts 1, 3, 6, 8, and 9 is denied.

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all allegations in the pleading and all

reasonable inferences that can be drawn therefrom, and must view such allegations and inferences in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). A cause of action should be dismissed only if the alleged facts, taken as true, fail to state a claim. *See Iqbal*, 129 S. Ct. at 1950.

While a court will accept well-plead allegations as true for the purposes of the motion to dismiss for failure to state a claim, a court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). On the contrary, "[t]he pleader is required to 'set forth sufficient information to outline the elements of [its] claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). A party must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

Mrs. Sigman was an employee of ABP, but not a shareholder. In addition, only Mr. Sigman contracted with Mr. D'Agostino – hence, Mrs. Sigman was not a party to the alleged contract with D'Agostino. At oral argument, D'Agostino did not object to the above facts, except to say that Mrs. Sigman was an influential employee.

"[A] corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *State Dept. of Envir. Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (1983). Similarly, an employee is not personally liable for the corporate actions. This corporate veil can be pierced to "prevent an independent corporation from being used to defeat the ends of justice, to perpetuate fraud, to

8

accomplish a crime, or otherwise evade the law." *N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.*, 2010 U.S. Dist. LEXIS 95594, at *26 (D.N.J. Sept. 14, 2010). None of these exceptions apply here, and thus Mrs. Sigman has not entered into any arrangement creating liability upon her. For the reasons set forth above, all claims against Mrs. Sigman are dismissed.

With regard to Counts, 1, 3, 6, 8 and 9, the Complaint sets forth numerous facts that allegedly support D'Agostino's claim. There are so many variations of how these facts may relate to the causes of action alleged, it is difficult to assess and to dismiss on a substantive basis.[3] Generally a court should "dismiss only if the alleged facts, taken as true, failed to state a claim." *Iqbal*, 129 S. Ct. at 1950. Here, the facts set forth a plausible claim; and accordingly, the motion to dismiss these counts is denied.

In Count 10 and in the "Wherefore" sections of all the other counts, Plaintiff makes claims for punitive damages. To succeed on a punitive damage claim, a plaintiff must show that the defendant acted with "actual malice, which is nothing more or less that intentional wrongdoing - an evil-minded act; or (2) an act accompanied by a wanton and wilful disregard of the rights of another." *Sec. Aluminum Window Mfg. Corp. v. Lehman Assoc.*, 260 A.2d 248, 251 (N.J. Super. Ct. App. Div. 1970). Also, according to New Jersey law, punitive damages are not available for breach of contract claims. *Thomas v. Northeastern Univ.*, 2011 WL 3205301, at *2 (D.N.J. July 27, 2011). Therefore, Plaintiff's claims for punitive damages in Count 2 – breach of contract causing damages – and Count 3 – breach of implied covenant of good faith and fair Dealing – are dismissed. For the

---

[3] If some of the causes of action are not clear to defense counsel; and do not set forth a plain statement of facts and law, as required for each cause of action, Rule 8 should be addressed.

reasons set forth, Defendants' Motion to Dismiss punitive damage claims emanating from contract-related claims is granted.

V

This Court now turns to address Plaintiff's Motion to dismiss Mr. Sigman's Amended Counterclaim. As mentioned, Mr. Sigman alleges three causes of action in: (1) a violation of the NJCFA; (2) negligence; and (3) breach of contract.

A violation of the NJCFA arises where there is: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.* 617 F.3d 207, 219 (3d Cir. 2010). Unlawful conduct includes "any unconscionable commercial . . . fraud, false pretense, [or] misrepresentation and the knowing . . . omission of any material fact with intent that others rely upon . . . such omission." N.J.S.A. § 56:8-2. In Mr. Sigman's Amended Counterclaim, Mr. Sigman alleges that Plaintiff engaged in unlawful conduct when he chose not to disclose the services and work he performed in the invoices. (Mr. Sigman's Amended Counterclaim, p. 16). Defendants also allege that Plaintiff knowingly created the Second Website that threatened the existence of the First Website and profitability of ABP. (Mr. Sigman's Amended Counterclaim, p.16). These facts demonstrate that Plaintiff acted unlawfully – by not recording or reporting his services and by creating a Second Website that violates Google's policies – and this action caused Defendants to suffer an economic loss. (Mr. Sigman's Amended Counterclaim, p.16). As such, the Defendants satisfactorily plead the necessary elements of a violation of the NJCFA. As a result, Mr. Sigman's cause of action for a violation of the NJCFA may proceed.

<u>Negligence</u>

10

To succeed on a claim of negligence[1], a party must show that Defendant "owed a duty of care, breached that duty, and that the breach was the proximate cause of Plaintiffs actual damages." *Worrell v. Elliott & Frantz*, 2011 WL 2580386, at *9 (D.N.J. Jun. 28, 2011). Mr. Sigman alleges that Plaintiff was hired and that he held himself out as an expert in web development. (Mr. Sigman's Amended Counterclaim, p. 17) Therefore, Plaintiff owed Mr. Sigman a duty of care, and he allegedly breached this duty by engaging in activity that violated Google's policies. (Mr. Sigman's Amended Counterclaim, p. 18). By violating Google's website policies, Plaintiff allegedly jeopardized the viability of the First Website. (Mr. Sigman's Amended Counterclaim, p. 16). As a result, Mr. Sigman alleges that he suffered damages. (Mr. Sigman's Amended Counterclaim, p. 17). Therefore, Mr. Sigman adequately pleads his negligence cause of action.

Breach of Contract

In order to succeed on a breach of contract claim, a plaintiff must show that (1) a valid contract exists, (2) the defendant materially breached the contract, and (3) the plaintiff suffered damages as a result of the breach. *Vukovich v. Haifa, Inc.*, 2007 U.S. Dist. LEXIS 13344, at *13 (D.N.J. Feb. 27, 2007) A valid contract exists when there is "mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization." *Id.* at *14. Plaintiff and Mr. Sigman contracted for Plaintiff' to develop the First Website. Plaintiff allegedly breached his contract by "jeopardizing defendant's website, violating Google policies, and causing

---

[1] The negligence and the breach of contract claims appear to overlap. The relationship of Sigman and D'Agostino is based on a contract, but the wrong occurred as a result of careless practice. It is early in the suit to determine whether one or both counts should be charged to the

jury.

11

the interruption of defendant's enterprise." As a result, Defendant suffered losses including loss of income, loss of economic advantage, and substantial counsel fees and costs. Because Mr. Sigman adequately pleads all elements of a breach of contract cause of action, Mr. Sigman may proceed with his breach of contract cause of action.

For the reasons set forth, Plaintiff's Motion to Dismiss Mr. Sigman's Amended Counterclaim is denied.

VI.

The Court, having reviewed the parties' submissions, having heard oral argument, and for the reasons set forth in the accompanying Opinion;

IT IS on this 14th day of September 2011,

ORDERED

1) Defendant Google's Motion to Dismiss or Transfer is denied;

2) Plaintiff's Motion to Remand is denied;

3) The Motion to Dismiss is granted for all claims against Mrs. Sigman, and all punitive damages emanating from contract related claims; and the Motion to Dismiss is denied on Counts 1, 3, 6, 8, 9; and

4) Plaintiff's Motion to Dismiss is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.